and proceed to our first case today which is United States v. Willie Dennis. Counsel, whenever you're ready. Good morning, Attorney Cohen. You may proceed. Thank you, Your Honor. May it please the Court, my name is David Jason Cohen, and I represent the appellant Willie Dennis. With the Court's permission, I would like to begin with point one of the appellate brief, specific focus on point 1b, which is the jury instructions given by the district court in this matter. I focus on this issue because I think it makes the most sense. It's the linchpin to all of the other arguments that we make in our appellate brief. So starting off with what law in this circuit is, as Your Honors all know, a jury instruction is erroneous, which is our contention here, if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law. In Mr. Dennis' trial where he represented himself as a pro se defendant, the district court's jury instruction was erroneous and misleading. It was erroneous and misleading because it permitted the jury to find Mr. Dennis guilty of cyberstalking even if his speech was constitutionally protected. Now the government claimed from their opening statement through their brief on appeal was that Mr. Dennis' emails and text messages were true threats. True threats are those statements where the speaker means to communicate a serious expression of an intent to commit an unlawful act of violence. From Virginia B. Black all the way through U.S. v. Turner. But the relevant part of the statute here states that whoever with the intent to kill, injure, harass or intimidate another person causes, attempts to cause or would be reasonably expected to cause substantial emotional distress to either the receiver of the information or the family. In the district court, the judge failed to properly narrow the meanings of the words harass and intimidate in the intent element of 18 U.S.C. 2261A to the speech which actually constitutes true threats. So that I understand how we're reviewing this. There was not an objection in the district court. Am I correct about that? So we're on plain error review? I would respectfully disagree, Your Honor. Help me out. Sure. There's some 10 or 12 pages in the charge discussion where Mr. Dennis and Judge Rakoff go back and forth. Mr. Dennis makes a whole host of objections. But to cut right to it on the joint appendix page 111, it was clear that the court presumed that Mr. Dennis' objection included, and I'm pointing specifically to line 19 through 23. At what page again, please? I'm sorry, joint appendix 111. Thank you. You're welcome. Where the court says to Ms. Dennis, in essence, I'm giving the government less than they're entitled to under the statute because I need to make these instructions closer to the evidence in the case. And this is the line that I'm citing, Your Honor, line 22. But there's no question that to frighten is one of the things prohibited by the statute. Prior to that, Mr. Dennis made an objection to the charge as His Honor wanted to give it to the jury. And as I stated before, we're right in the middle there of almost 10 pages of this pro se defendant making objection after objection after objection to the charge. So while I do believe it fails under a plain error analysis as well, I believe it's a de novo review when you look at Mr. Dennis' pro se status as well as the contingency charge. But he's an attorney. Well, he is an attorney, Your Honor. But as Judge Rakoff pointed out many times, he is not a criminal attorney. He's not a trial attorney. He's not a litigator. But at page 3 of your brief, you concede that he didn't articulate the precise challenge to the jury instruction that you're arguing now. It's certainly not the one that I believe a litigator is arguing. But why don't we let you get to your argument as to why you think there's a problem here. Sure, Your Honor. Thank you. The failure to limit the alleged unlawful communication to speech that was unprotected by the First Amendment, it permitted the jury to find Mr. Dennis guilty of protected speech. So the argument is simply, when Judge Rakoff cited an either-or standard for the element of the statute, he said Mr. Dennis could have been, could have either intended to harass or intended to intimidate his coworkers. In there, Judge Rakoff gave four different alternatives for the intent element. He said Mr. Dennis could have harassed his coworkers if he had the intent to cause worry or if he had the intent to cause them distress. That was as to the harass aspect. No further instruction was given to the jury to explain what level of worry or what level of distress was necessary to satisfy. What about the threat to cause bodily injury? Doesn't that put, narrow the definition of what the threat or the basis of the frightening? It certainly would. But unfortunately, Judge Rakoff only used the threat for bodily injury for the second alternative under intimidation. But frightened, the word frightened was added to the definition of intimidate, not the definition of harass. Correct, Your Honor. So he limited, in fact, originally he had suggested adding it to the definition of harass and then said no, it, it, alternatively, I should put it in the definition of intimidate, which is to cause distress. How does threatening someone not distress them? Well, threatening someone can cause them distress, Your Honor, but when he speaks about intimidate, right, he speaks about, the standard definition is to frighten or over-or, especially in order to make somebody do what they want. Here, Mr. Dennis was trying to get his coworkers to do what he wanted, to join his EEOC claim and also to make their voices known. But the claim was to do what they wanted and the court specifically rejected that and said the instruction is to cause bodily injury, limiting it precisely to avoid any First Amendment concerns. As Judge Rakoff noted. Now, your, your client, and I don't want to revisit what he objected to or not, but my understanding was he said, Judge, I'm happy with your instructions, I just don't want you to make any change to it. So we're dealing with the addition of the word frighten under the definition of intimidate and the word worry. And my, my question is, why didn't your client ask for a true threats instruction? He, again, I would say he's a pro se litigant who didn't have the knowledge to ask for one. But, but if I may, Your Honor, the problem that I see. And how would it have helped him? A true threat instruct, typically it's something that the government requests as an exception to First Amendment protection when it is raised. So in a typical case where a defendant is being charged for words, a defendant will say, well, I'm, these words are protected. It's content, it's protected under the First Amendment. And the natural request comes from the defense, comes from the government. The government wants to say, no, no, no, they're not protected because it's a true threat. So I'm, I'm having a disconnect why your client would have thought a true threat instruction would have been helpful to him under the circumstances of this case. Sure. Well, Your Honor, I think when we look at the either or aspect of it, the harass, we don't know if the jury convicted on the idea of harass. And harass did not have any component of it that contained a true threats instruction. So if the jury was convicting Mr. Dennis on the harass part of the alternative definition, then it would have been on protected speech. I think it was necessary, and I think the government should have done it as well. I think both the government and the court were derelict in their duties by not requiring true threats to be attached to either of the alternatives. It was only attached to the fourth alternative, as Your Honor correctly points out, the part of intimidate where he speaks about intimidating and it must be a true threat there. But when it talks about the harassment part, there's no mention of it. And we don't know what the jury convicted on. Did the jury convict on the harassment part? Did the jury convict on the fighting part? Did the jury convict on the intimidating part? Without knowing or having that limiting part of true threats instruction, it's unknown. Therefore, Mr. Dennis could have been convicted on less... Except the instruction is exactly the words, unless I got it wrong. To intimidate means to frighten or threaten and then with bodily harm, either the victim or the victim's family. So that's directly connected, the frightened to a true threat, bodily harm. I would disagree, but I think it would be fair to say that we don't know if they convicted on the intimidate or did they convict on the harass. Harass has no such protection. It doesn't mention threat of bodily harm whatsoever. And so do they convict under the, even granting Your Honor's arguendo, but granting that position that it did attach to both, which I don't think it attached to frighten. But even if it did, we don't know if the jury convicted on frighten. So then we're left with the first phrase, to harass means to cause worry or distress. And your concern is the worry part, not the distress, right? Because that's the standard jury instruction. I mean, that's the definition. I mean, the statute uses those words. I understand the statute does, but the statute as applied here, as our argument states, would be unconstitutional without the true threats definition. It doesn't narrow the harass. So your argument is that it had to be distress emanating from a true threat. It had to be with the intent to cause, as Turner and Virginia Black states. Let me ask you, even assuming we were to be persuaded by the argument you've advanced so far, how was your client prejudiced? And I want you to focus particularly on the evidence that did come in with respect to two of the defendants, I'm sorry, two of the victims, Mr. Bix and Mr. Bostic. The evidence that the messages and language toward them did involve true threats seems very strong. I certainly agree that it is stronger than it is to the third person, Mr. Connick. We'll put Mr. Connick aside for a moment. As to those two defendants, how is there any prejudice? I mean, why do you think this court couldn't find that the defendants would have been convicted even if properly instructed? Because if we look at the context, which the statute requires us to do, or the law requires us to do, of the relationship between Mr. Dennis and those two complainants who you spoke about, Your Honor, I believe that there is absolutely a reasonable reading of this, and I would be persuaded that it is the correct reading of it, that he was not threatening them. He was trying to get them to do something which he would have liked. Well, that goes to his state of mind. But what's the relevant inquiry? As to the effect it had on the listener? Is that what you're asking me, Your Honor? I want to make sure I'm answering the question of the reasonable person, the effect on the listener. I just want to make sure I understand your view as to whose perspective we look at this from. It's an objective standard of the reasonable person in the position. And so hearing the statements that your client made to these individuals or the communications he conveyed to them, how can these be thought of as anything other than true threats? It can be looked at as other than true threats, Your Honor, and this goes to the sufficiency of the evidence argument. Mr. Dennis was not permitted to bring in certain evidence that would have given context to it, that would have allowed the jury to get a sense of whether Well, that goes to an evidentiary question. But assuming there are no evidentiary errors, and the jury hears things like, you know, I don't know why I didn't listen to others and roast you a long time ago. Your moment is here. You'll be a biblical example. You're not at the very top of this list, but I can hardly wait to get you. You're going to be a biblical symbol during this time of injustice and hatred. I mean, you know, what would a reasonable person think these are other than true threats? They're not threats to do them bodily harm or bring them violence, Your Honor, respectfully. Those words from Mr. Dennis is he, earlier in the career of Ms. Fostick, there were other people who didn't want her to continue. And to grow within the firm as the way she did. So, Mr. Dennis, it looks like you want to say something. I'm just trying to understand what someone saying, you're toast, and this is going to be in the biblical sense, is supposed to mean other than your life is being threatened. Well, Your Honor, this is an eye for an eye in the biblical sense. Nothing physical happened to Mr. Dennis. I understand nothing physical happened. The question is whether he was threatened with it, not whether he was actually injured. Correct. I'm referencing the eye for an eye, Your Honor. So what happened to Mr. Dennis was his career was upended, right? And he's suggesting the same as to Ms. Fostick. He said, I had that opportunity to do that earlier, and I didn't do that. And that's what I'm suggesting he meant by you're toast. I see you're over time, but you have reserved your two minutes for rebuttal. Thank you, Your Honors. Your Honor, and may it please the Court. My name is Stephanie Simon. I'm an assistant United States attorney for the Southern District of New York. I represent the United States on appeal, as I did before the District Court. I'd like to pick up with the Court's questions regarding the jury instructions in this case. As Your Honor's question suggested, we're on plain error review here, so the question is whether any purported error is plain, because there's no binding precedent from the Supreme Court or from this Court. Any error, purported error with respect to the jury instructions would not be plain. There's no binding precedent on point addressing this specific statute. But I think the key question on plain error review... Well, the instruction in United States v. Hunt, and those in Malik and Turner's decisions, include true threat limitations, and they explain that it's because of the First Amendment and binding precedent. They say you can only punish speech if it falls into certain categories, among them true threats. So the notion that this isn't established seems to me to be a first hurdle for you. Well, this Court in Hunt did address a jury instruction that included a true threats instruction, but that was with regard to a different statute, not the cyberstalking statute. But for purposes of the First Amendment, you're not suggesting the First Amendment applies differently depending on which of these statutes is involved, or have I misunderstood your argument? Well, Your Honor, the wording of the jury instruction may be different depending on what the statute is. And in Hunt, this Court pointed out in assessing whether the error was plain and purported in a purported jury instruction at issue, that another case that the parties had pointed to was with regard to another statute. The First Amendment tolerates all kinds of offensive speech, all kinds of speech we disagree with. For it to cross the line and be punishable criminally, what do you think has to be the determining factor? So, Your Honor is absolutely correct that the First Amendment prohibits offensive speech. I apologize. Prohibits the criminalization of offensive speech unless it falls into certain categories. One of those is true threats. As the Supreme Court, as recently as Counterman, made clear, that has to do with the actus reus. It is an objective inquiry that focuses on whether the messages would be perceived by a reasonable person to be a threat. The government doesn't dispute that. What the government's point is that the case is interpreting the inclusion of a true threat instruction or with respect to other statutes. So it would be an issue of first impression in this court whether a true threat instruction is required. But I don't dispute... You have an instruction here on harassment that defines harassment as causing worry or distress. How do you think that passes First Amendment? Well, the Supreme Court in Counterman, as I was alluding to before, made clear that the intent instruction, the intent aspect, has nothing to do with whether it's a true threat. A true threat has to do with the actus reus, and it's whether a reasonable person would consider the messages to be a threat. The statute at issue at Counterman... And where was this jury charged with that? The jury was not charged with that. See, I understood the government's brief not to be really disputing that the charge was deficient in some ways and be arguing plain error in other respects. So am I right in that that you're not really arguing that this is the kind of instruction that should be given in these cases? I take your point, Your Honor, and I think that the implication from the Supreme Court's and this Court's First Amendment cases is that it certainly would have been safer for the district court to have given a true threats instruction. We don't dispute that. Okay, so now tell us why you think that we don't have a prejudice concern here. Yes. And just as I asked your colleague for the appellants to focus on Mr. Bix and Mr. Bostick, I'm going to ask you to focus on Mr. Cottle. I'm happy to do so, Your Honor. So as Your Honor suggested, it's the defendant's burden on plain error to establish an effect on the substantial rights, meaning absent the purported error, the outcome would have been different. Your Honor asked about the evidence with respect to Mr. Cottle. Here, the evidence was overwhelming with respect to all the victims, including Mr. Cottle, that the messages were true threats. Here, Mr. Dennis sent messages to Mr. Cottle after he had been fired from his law firm. He showed up at a professional conference where Mr. Cottle was, and he physically accosted him the first night of the conference. Then overnight... When you say physically accosting him, he didn't touch him. He went up to him and it got in his face. Yes, that's correct. You think that's enough? Not that on its own. And of course, we're focused on the entire course of conduct. So Mr. Dennis sent Mr. Cottle 23 messages that accused Mr. Cottle of many misdeeds and in effect blamed him for his firing and then ended with, I will find you. Then the next day, Mr. Dennis did in fact find Mr. Cottle at the conference. He, as Your Honor suggested, got in his face again. He didn't touch him. But he went and sat next to him. He got in his face. Mr. Cottle tried to get up. Mr. Dennis chased him. Mr. Cottle testified that based on that course of conduct, the messages and the in-person confrontation, he was scared. He thought that perhaps Mr. Dennis had a weapon in his hands. I'm not asking you now whether this evidence is sufficient to support a verdict on a proper charge. But if the charge is improper, you have to convince us, don't you, that any reasonable jury would have to find this a true threat? And that's my concern. Well, on plain error review, it's actually the defendant's burden to establish an effect on his substantial rights. So it's his burden to prove that, but for the error, the outcome would have been different. And in Hunt, this Court, considering an instruction error, held that because the evidence there was overwhelming... And what if we're not sure? What if we're just not sure whether a jury on a correct instruction would or would not find that this was a true threat? How does the plain error review come out then? Well, if the Court isn't sure, then the defendant hasn't met his burden of establishing... You think that's the law? I think it's the defendant's burden to establish an effect on his substantial rights, meaning but for the error, the outcome would have been different. Well, what is established is we don't know. The jury might have found foreign. But... Isn't he entitled to basically a trial in which the jury is properly instructed on the law here? Well, the standard of review, Your Honor, is whether... Of course, he's met all the elements of the plain error standard, given that it's his burden. I'm happy to address some of the other messages that were sent to Mr. Cottle, which includes an email that was sent to him after the conference that included a reference to menacing. There was another text message that isn't referenced in our brief, but was sent afterwards and says something to the effect of I wouldn't spin the wheel again if I were you. Were those admitted at trial? Yes, it was Government Exhibit 1091, admitted at trial. And also there were messages regarding Mr. Cottle sent to others, including a photo of Mr. Cottle that Mr. Dennis took at the professional conference when he showed up and confronted Mr. Cottle in person. He sent that photo to another one of his former law partners and said he just walked into the room. That's the kind of message that creates the image of a persistent tormentor, like this court, excuse me, the 11th Circuit mentioned in Fleury, is the kind that the true threats doctrine is meant to protect. It's meant to protect against messages. I don't understand why the government didn't ask for a true threats instruction. I mean, they understood his defense to be this is content restriction. I struggled with that. Frankly, Your Honor, the issue was not raised below and the government didn't ask for it. Well, the judge mentioned First Amendment during the jury charge colloquy in response to the government's request to make some changes that the court rejected. The court said, you know, I'd have to keep this narrow because of the First Amendment. The court did raise the First Amendment, certainly not in the way that Mr. Dennis suggests on appeal, but the court did raise the issue and perhaps, as I mentioned, it would have been more protective for the district court to have given a true threats instruction. The government doesn't contest that on appeal. But I think given that, Mr. This is your burden. I mean, you've got a charge that doesn't tell the jury accurately what your burden was. I assume when you charged the case you understood that a true threat, as the court said in Hunt, is a risk that it would be viewed as threatening violence, a threat of injury. True threats are expressions that there's going to be an act of unlawful violence. That's encounterment versus Colorado. So violence is what has to be threatened. And that's what was not communicated here at all. Even the statements you've given us with respect to Mr. Cottle. I mean, you know, a lot of them were made in public, you know, and they wind up one way. I'm not sure how we find, not on sufficiency, but on no prejudice that this error didn't make a difference in the outcome of the case. No charges to violence. You're correct. There was no charge as to violence. But the question is whether the evidence, whether the defendant has met his burden showing an effect on his substantial rights. And I want to pick up on a thing your Honor said about the messages to Mr. Cottle. The entire context of the communication matters. In this case, Mr. Dennis had been fired from his firm. He showed up at a professional conference. I mean, I understand this. Tell me what implies violence there. Oh, it's the combination of the messages, which were admittedly some of them were cryptic. He's got a motive to be angry. I understand that. He confronts him in a public matter. What does he say or do that suggests that violence is going to be the outcome of this encounter? I think it's a combination of the message, I will find you, and the fact that he did then follow up and say, I will find you. And in addition. He finds him at the meeting the next day. Right, but he does so in a way that makes the victims feel frightened for his physical safety. Mr. Cottle testified to that specifically. And as this court said in going back to Malik and including in Turner, the victims responses to the messages are highly relevant in making the threat determination. Because the victim is the one who's closest to the context of the messages. So in Malik, this court held that even ambiguous or cryptic messages could be threats if the recipient perceives them to be threats. In Turner, this court was considering blog posts that threatened certain judges from the Seventh Circuit and had messages that were arguably ambiguous. And the court found relevant that the victims there perceived the messages to be threatening. All of the victims here, including Mr. Cottle, testified at length that they he was concerned with his physical safety. He stopped wearing headphones on the subway, wore shoes with treads so that he could run or fight. If Mr. Dennis accosted him, he stopped attending professional conferences. Ms. Bostick and Mr. Bix both testified at length about how they found the messages threatening. Ms. Bostick stopped going outside. The firm got private security for her. She moved out of state that she was so concerned based on Mr. Dennis' messages. Let me ask you a question. Both in Young, but also the Eighth Circuit in Sieradnowski, I'm pronouncing the case, held that when there's an as-applied constitutional challenge, which is the challenge here, it's not an on-its-face challenge, and a sufficiency of the evidence challenge, that they merge into a single question, meaning that the sufficiency of the evidence is, if there's sufficient evidence, then that resolves the as-applied challenge. You agree with that, correct? I think there was nothing wrong with that mode of analysis. This court hasn't addressed that directly. I think here, we have to keep in mind that we're on plain error review with respect to the as-applied challenge, because Mr. Dennis didn't raise this issue below. Let me suggest to you a different way of looking at it. We might find that there was error and that there was prejudice, and then on sufficiency review, we might find that, and by the way, the evidence isn't sufficient. That would result in an outright reversal. If we would find error that was plain and satisfied the demonstration of prejudice, but nevertheless found that the evidence could be sufficient, then you'd get vacater and remand. Doesn't that suggest that they are two different modes of analysis? I want to make sure I understand Your Honor's question. To me, those are two different questions. What I took Judge Kahn to be asking was the as-applied challenge with respect to whether Mr. Dennis's conduct could be prosecuted consistent with the First Amendment, as opposed to the question regarding the jury instructions. Well, I suggested to you that we might find that this evidence was sufficient to support conviction if the jury had been properly charged, because then they would have decided whether they wanted to draw the inferences of threatened violence that you've been urging us to do today. That's a separate question from whether we think it's sufficiently clear that they would have drawn those inferences that were satisfied the defendant wasn't prejudiced by this error in instruction. So I'm concerned that you've just suggested that look at sufficiency. If sufficiency is fine, there's no constitutional question. If sufficiency is not fine, then, of course, there's reversal. But I'm wondering whether you really want to put it to that kind of a stark analysis. I think that I was and I apologize if I misunderstood Your Honor's question. I was addressing what I took to be two different questions, the as-applied challenge versus the challenge to the jury instructions regarding the jury instructions. Because the jury instruction is a First Amendment challenge, right? Well, yes, it's a challenge to the propriety of the jury instructions, as opposed to what I take the general claim in Mr. Dennis' brief, that this conduct could not be prohibited with consistent with the First Amendment of the type that a defendant typically raises in a motion to dismiss the indictment, which of course was not made here. And I think that the Eighth Circuit, when addressing, when saying that the two analyses collide. I think I understand. Thank you. I see my time is up, but I just want to address one additional aspect, unless the Court has further questions. I just wanted to point the Court's attention to Hunt on this question of the sufficiency of the jury instructions on plain error review. And there, there was a challenge to the jury instructions with respect to the intent element. And the Court said that plain error review applied. And the defendant there challenged both the jury instruction and the sufficiency of the evidence based on the jury instruction. And the Court held because plain error review applied, the question is whether the defendant had met his burden. And the Court said that the defendant was overwhelming, the Court said, on the issue of whether the conduct could be prohibited consistent with the First Amendment, that there was, the defendant couldn't meet his burden. And so even if there were an error, a reversal was not appropriate. And that was true with respect to the jury instructions. But the fact that the defendant met his burden because it was overwhelming implies that if it was less than overwhelming, then he may have met his burden. Why don't you think that that's the implication of that statement in Hunt? Respectfully, Your Honor, I don't think saying that because it's overwhelming meant that the Court didn't need to look further means that if it was something less than overwhelming, the reversal would be appropriate. I think that... What is the point of your citing Hunt then? Because I don't see Hunt helping you much at all. My point, and sorry if I wasn't addressing Your Honor's question, but my point is that I believe the evidence is overwhelming here. I've addressed, with respect to Mr. Cottle, I'm happy to address at further length regarding Mr. Bix and his Bostitch. Just before you sit down, I want to make sure, you're arguing it's overwhelming, but did I also understand you to say if it's not overwhelming, the government still wins unless Mr. Dennis can show that you know, it certainly would have resulted in a different outcome. I think it's the defendant's burden on plain error to meet every prong of the plain error test. So he has to show there was an error, it was a plain, it affected his substantial rights. But you think it affects substantial rights unless he can show that he would have been acquitted? Well, what the Supreme Court... I just want to be sure, because that's what it seemed to me you argued earlier, and if that's not your argument, I want to understand it. The burden, as I understand it, is that the defendant has to show a reasonable probability that but for the error, the purported error, the outcome would have been different. A reasonable probability. The Supreme Court rejected the idea that any possibility, however slight, could result in a reversal. The Supreme Court held that it had to be a reasonable probability, and the government's position is the defendant can't meet that burden with respect to Mr. Cottle. He certainly can't meet it with respect to Mr. Bix and Ms. Bostic, as Your Honor pointed out. The messages to those victims were voluminous. They were threatening on their face. A reasonable person would find them threatening, and the victims in this case testified at length that they found the messages to be threatening, that they changed their entire lives out of fear that Mr. Dennis would hurt them or a member of their family. Thank you. Thank you, counsel. Thank you. Attorney Cohen, you have two minutes for rebuttal. Understood, Your Honor, and thank you. I understand why Your Honor put Bostic and Bix over here and Cottle over here. Just quickly on Cottle, this was a conference that all of us have been to. This was a legal conference. Mr. Dennis had every right and reason to be there. I go there with my associates all the time. I say, okay, it's 500 people there. Everybody starts shouting. People there are concerned, embarrassed. I mean, you know, this is the argument that he's become so upset that someone would have concern for one's safety at that point. That's what I understand the government to be suggesting from all of this, and, of course, they've got other evidence as well. Sure. Your Honor, I don't know that they say other people were concerned and embarrassed. First, I don't think that would have been able to come in because that would have been hearsay. Second of all, I don't think the testimony reflected how other people felt, nor do I think that that affects the testimony. I thought that was actually the fact that there were other people in reacting was helpful to your client in the sense that it wasn't like he took him into a dark alley and did this. He was doing it in public, which might suggest that he was just letting off steam rather than actually threatening to hurt him. Correct, Your Honor. I don't think we're saying... Do you want me to take into account that there are other people there, or do you want me not to take that into account? I think it's right to take it into account, Your Honor, but I don't think what we're saying is mutually exclusive. I'm simply saying their reaction to it is what wouldn't come in because that would be hearsay. The fact that they were there... Well, we'll argue that. I guess we could argue that with how many exceptions might apply there, but go ahead. But the fact that they were there, they were there, and anybody could testify to that. But the idea that I will find you, that's substantially different from many of the other quotes that you, Your Honor, have attributed that were at a conference in the morning at breakfast. I'll be there in the morning at breakfast. Well, isn't it all in context? If you approach someone aggressively, and then you overnight, in the middle of the night, send them multiple texts ranting that you'll find the person, is it unreasonable that someone might be concerned? Well, I think that that's... I mean, if they get, you know, in the middle of the night, a text from someone that claims or blames you for firing them, a reasonable person might not take that as a friendly gesture. I'll see you at the conference tomorrow. We'll have coffee together. I don't know that Mr. Dennis blamed Mr. Cottle for having him fired, but nonetheless, what Your Honor is suggesting does not rise, again, to the level of truth. Well, isn't that what he approached him about? Blaming him for firing? Oh, I'm sorry. I just didn't hear counsel's answer. I'm so sorry. Oh, no, no, no, no. It doesn't rise. It wouldn't rise to the level of being in fear of violence or something serious. I'm sorry. No, no, no, no. Right? He may say that he's going to come and talk to me about it. I mean, I think the fact that he's going to the conference, even if Mr. Cottle, and it was reasonable for Mr. Cottle to say, oh, I've got to deal with this jerk again. He's coming down to him in a conference, dressed in a suit with dozens of other lawyers around at the same table. I don't think there would be any realistic view of the evidence, period, that Mr. Cottle would have believed that something would happen to him. Also, what's clear as day, Mr. Dennis is a 60-year-old man who has trouble walking. He was about 5'6", and Eric Cottle was trying out for the Olympics as an Olympic athlete. That also comes into the context that we're talking about. So Mr. Cottle thinking that his physical well-being was threatened because this older gentleman was going to come speak to him, who he has spent years mentoring, I don't believe any reasonable view of the evidence. I guess it's in context. Let's assume there was a separate trial of the defendants. Some of the evidence about your client and would undoubtedly perhaps come in as relevant evidence if Mr. Cottle was aware of it, correct? Yes, but all Mr. Cottle's texts preceded everything with Bostic and Vicks. So nothing with Bostic and Vicks came until after Cottle had blocked him and those interactions were over. The very fact that he is interfering with him physically rather than just sending emails or doing anything, this would prompt someone to fear for one's safety at that point, that the person is acting irrationally and in a way that threatens, that impedes his physical autonomy. Well, I take issue with that respectfully, of course, Your Honor. I don't believe that he acted irrationally, nor do I think he impeded his physical movement. He didn't block him. He walked after him. He didn't put his hand on his shoulder and tell him to stay down. He was talking to him and Mr. Cottle got up to leave and Mr. Dennis followed him. So I don't believe that there was any physical... He took pictures of him, right? Followed him outside, took pictures of him? I believe took a picture, but regardless... To what end is taking pictures of him in any way related to trying to resolve some dispute? This is the first time I've asked you a question. You might want to wait until you hear what the question is. How does taking pictures of someone that you've got this dispute with, that you then decide to go to a conference with, to have a conversation with about the dispute, why you would go there is another... Seems a little bit unusual to me. But in any event, why would you be taking pictures of him? To what end is the taking of the pictures? Out of friendship? He took the picture. You had answers to the others. What's the answer? He took the picture and he sent it to someone else at the firm, letting them know that he was at the conference with Mr. Cottle. That's what he did. And to what end was that? To inform the other... A firm that he no longer was a member of. Correct. A firm that he was no longer a member of. So to what end? Makes no sense, does it? No, I think it does. He's letting... This is all in context, isn't it? I will find you is a promise to a child lost. I will find you is a threat. It's all in context, isn't it? Okay. Mr. Cottle, I don't even know if Mr. Cottle had any knowledge that the picture was taken, so I'm not sure that that piece of evidence is relevant to the analysis of Mr. Cottle. Mr. Cottle learned about that sometime later from someone else, is my understanding, if he ever learned about it at all. But the I will find you quote that we all seem to be focusing on is him telling him, I will find you tomorrow at breakfast. I think that's a very innocuous statement, and I respectfully disagree with Your Honor if he was suggesting that Mr. Dennis didn't have reason to be there. Well, I'm only suggesting that you don't take just the words, you take the context in which they're issued. Obviously, Your Honor, that's correct. But Mr. Dennis did have a right to be there, so I don't think it's unusual. Just because he's not with one firm, it wasn't just that firm that was there. Again, I don't disagree, but it would seem odd to me if I had a dispute with someone, I'd go to a professional conference to then try and seek some resolution of that at the conference. I think I might pick another time. But in any event, that might just be a question of judgment as opposed to a threat. Thank you. And I don't believe he went there for that purpose. He didn't go for the purpose to confront him. Thank you, counsel. Thank you. We will take the matter. We'll reserve a decision on the matter.